## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and UNITED STATES OF AMERICA, <br><br> *Defendants,* <br><br> and <br><br> THE STATE OF FLORIDA and FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, <br><br> *Defendant-Intervenors.* | Case No. 1:22-cv-22459-KMM |

**PLAINTIFF'S COMBINED OPPOSITION TO THE FEDERAL DEFENDANTS' AND INTERVENORS' CROSS-MOTIONS FOR SUMMARY JUDGMENT AND <u>REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

GEORGE B. ABNEY
Florida Bar # 171557
george.abney@alston.com

KEVIN S. MINOLI
DC Bar # 1630494
kevin.minoli@alston.com

Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Phone: 404-881-7000
Fax: 404-881-7777

*Attorneys for Plaintiff Miccosukee Tribe
of Indians of Florida*

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Auer vs. Robbins*, 519 U. S. 452 (1997)............................................................ 6

*Christopher vs. SmithKline Beecham Corp*., 567 U.S. 142, 155 (2012) ....................................... 6

*Citizens for Smart Growth vs. Sec'y of the DOT*, 669 F.3d 1203, 1210 (11th Cir. Ct. App. 2012)4, 15

*Fund for Animals*, *Inc. vs. Rice,* 85 F.3d 535, 541-542 (11th Cir. Ct. App. 1996)) ................. 4,15

*Indus. Ass'n vs. Bd. of Governors of Fed. Res. Sys.*, 468 U.S. 137, 143 (1984) ........................... 13

*Kisor vs. Wilkie*, 139 S. Ct. 2400, 2415 (2019) ........................................... 6, 12, 13, 15

*Lujan vs. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ................................................. 17

*Marsh vs. Or. Nat. Res. Council*, 490 U.S. 360, 376-77 (1989) .................................... 5

*Marshall Cnty. Health Care Auth. vs. Shalala*, 988 F.2d 1221, 1226, (D.C. Cir. 1993)............... 5

*Massachusetts vs. EPA*, 549 U.S. 497, 528-36 ........................................................ 7

*Miccosukee Tribe of Indians of Fla. vs. United States*, 2008 U.S. Dist. LEXIS 57809, *63-100 (S.D. Fla. July 29, 2008) .......................................................................... 7

*New LifeCare Hosps. of N.C., LLC vs. Azar*, 466 F. Supp. 3d 124 (D.D.C. 2020) ............... 24, 25

*O'Neill vs. Cate*, 647 F. Supp. 3d 1299, 1305 (S.D. Fla. 2022)..................................... 5

*Preserve Endangered Areas of Cobb's History vs. United States Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. Ct. App. 1996) ...................................................... 4

*Sims vs. Apfel*, 530 U.S. 103 (2000) ...................................................... 25

**STATUTES**

33 U.S.C. § 1344(g)(1) .................................................................... 11

i

5 U.S.C. § 706.................................................................................................................. 4

5 U.S.C. § 706(2)(A)......................................................................................................... 4

5 U.S.C. § 706(2)(B)......................................................................................................... 4

5 U.S.C. § 706(2)(C)......................................................................................................... 4

5 U.S.C. § 706(2)(D)......................................................................................................... 4

5 U.S.C. § 706(a)(2)(A) & (C)................................................................................... 10, 14

**REGULATIONS**

40 C.F.R. § 233.10(b) ....................................................................................................... 7

40 C.F.R. § 233.1(b) ....................................................................................................... 15

40 C.F.R. § 233.11(h) (note)........................................................................................... 12

40 C.F.R. § 233.12(a)...................................................................................................... 15

The Miccosukee Tribe of Indians of Florida live, work, hunt, fish, and recreate on Indian lands within the State of Florida – federal reservation lands, lands held in trust by the United States government, lands for which the United States Congress has transferred certain use rights to the Tribe, and lands held under a perpetual lease from the State of Florida. The Tribe's challenge to EPA's approval of Florida's application to operate a Clean Water Act § 404 permitting program rests on one fundamental question — may a state assume permitting authority over waters that are outside of its regulatory jurisdiction? According to the Federal Defendants, "as a matter of statutory construction and common sense, [] a state cannot assume permitting authority over waters that lie outside of its regulatory jurisdiction...[which] include waters in Indian lands where states generally lack 'authority to regulate' discharges of dredge or fill material." *Federal Defendants' Combined Memorandum in Support of their Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment*, ECF # 36 and #37 ("Def. Mot.") at 18. This should end the matter altogether. However, the Federal Defendants and Intervenors continue to assert that Florida's application and EPA's approval thereof was lawful.

EPA's approval of Florida's application was not lawful, for at least the three reasons articulated in Plaintiffs Motion for Summary Judgment. First, EPA's approval was arbitrary, capricious or otherwise not in accordance with law because Florida's application did not comply with the applicable statutory and regulatory requirements. Pl. Mot. At 5-9. Second, EPA's approval was arbitrary, capricious or otherwise not in accordance with law because the agency substituted the term "Indian country," as defined 18 U.S.C. § 1151, for the term that appears in EPA's regulations, "Indian lands." Pl. Mot. at 9-16. Third, EPA lacked the authority to transfer

1

permitting authority over the Miccosukee's Indian lands. Pl. Mot. at 16-20. Federal Defendants'

Combined Memorandum concedes many of the facts highlighted in Plaintiff's Motion and fails

in its attempt to reach an alternative conclusion from those facts. As a result, the Court should

grant Plaintiff's Motion for Summary Judgment and deny Federal Defendants' and Intervenors'

Cross Motions for Summary Judgment.

## STANDARD OF REVIEW

When a challenge to an agency action, such as this one, seeks review under the

Administrative Procedure Act, a "reviewing court shall decide all relevant questions of law,

interpret constitutional and statutory provisions, and determine the meaning or applicability of

the terms of an agency action." 5 U.S.C. § 706. Reviewing courts "shall…hold unlawful and set

aside agency action, findings, and conclusions" that the court finds are "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); "contrary to

Constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B); "in excess of

statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C);

or "without observance of procedure required by law," 5 U.S.C. § 706(2)(D).

Within the 11th Circuit, "a court shall set aside an action of an administrative agency

where it is arbitrary, capricious, or an abuse of discretion…[but] shall not substitute its judgment

for that of the agency." *Preserve Endangered Areas of Cobb's History v. United States Army

Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. Ct. App. 1996). "To determine whether an

agency decision was arbitrary and capricious, the reviewing court must consider whether the

decision was based on a consideration of the relevant factors and whether there has been a clear

error of judgment." *Citizens for Smart Growth v. Sec'y of the DOT*, 669 F.3d 1203, 1210 (11th

Cir. Ct. App. 2012) (citing *Fund for Animals, Inc. vs. Rice*, 85 F.3d 535, 541-542 (11th Cir. Ct.

App. 1996)). Review of an agency action must be "searching and careful," but the standard of review a court measures an agency action against is "narrow." *Id.*

## ARGUMENT

**I.    EPA's Approval of Florida's Application is Not Entitled to Heightened Deference**

Federal Defendants incorrectly contend that the Court owes EPA a heighted level of deference in this case. This case does not involve a challenge to an agency decision that implicates EPA's technical expertise or that otherwise requires the Court to view its role as "guarding the agency's discretion," Def. Mot. at 14 (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 376-77 (1989) ("*Marsh*"), and neither EPA's approval of Florida's application nor the agency's regulatory interpretations are entitled to any increased level of deference.

The scientific nature of the question presented to the Supreme Court in *Marsh* is easily distinguishable from the claims before the Court in this matter. In *Marsh*, the Respondents argued that the information contained in two specific documents – a memorandum generated by two biologists from the Oregon Department of Fish and Wildlife and a soil survey prepared by the United States Soil Conservation Service – was "significant new information" that required a Supplemental Environmental Impact Statement under the National Environmental Policy Act. *Marsh*, at 368-369. The United States Army Corps of Engineers, the Petitioner in the case, disagreed, defending the decision it had reached, "based on its own expert evaluation," that the information in the two documents was either inaccurate or insignificant. *Id*. at 370. As the Supreme Court correctly recognized, the dispute in *Marsh* was not over the correct interpretation of an ambiguous statutory or regulatory term, nor over the application of such a term to undisputed facts. *Id*. at 377. Rather, *Marsh* "involve[d] primarily issues of fact." *Id*.

3

Conversely, the questions before this Court are primarily issues of law for which the Court is asked to determine the proper meaning of a statutory or regulatory provision. *O'Neill v. Cate*, 647 F. Supp. 3d 1299, 1305 (S.D. Fla. 2022) (holding that "when a complaint seeks review of agency action under the APA, '[t]he entire case on review is a question of law,'" quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226, (D.C. Cir. 1993)). Federal Defendants cite to no precedent extending the reasoning in *Marsh* to questions of law, and the Court should not do so in this case.

Nor should the Court defer to EPA's regulatory interpretations. An agency's interpretation of its own regulation is only entitled to deference if the regulation is "genuinely ambiguous." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). Before a court concludes that a regulation is ambiguous, it must first use "all the standard tools of interpretation" and "'carefully consider' the text, structure, history, and purpose of a regulation" to discern the provision's meaning as "if it had no agency to fall back on." *Id*. If, after exhausting the tools of construction, a court determines that genuine ambiguity exists, the government's interpretation still must be reasonable. *Id*. "Even then, not every reasonable agency reading of a genuinely ambiguous rule should receive Auer deference." *Id*. at 2416 (referring to the Supreme Court's decision in *Auer v. Robbins*, 519 U. S. 452 (1997)).

To be entitled to deference, a reasonable interpretation must be "actually made by the agency," "implicate its substantive expertise," and "reflect 'fair and considered judgment.'" *Id*. at 2416-2417. An agency's interpretation of its regulations is not entitled to deference if the subject of the regulation falls outside the agency's ordinary duties or falls within the within the duties of another agency. *Id*. at 2417. Finally, courts "should decline to defer" to a "'convenient litigating

position' or 'post hoc rationalizatio[n] advanced' to 'defend past agency action against attack.'"

*Id*. (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)).

## II.     Federal Defendants Concede Facts Demonstrating that Plaintiff is Entitled to Summary Judgment on Counts I and III of the Complaint

Federal Defendants' Motion concedes facts regarding EPA's approval of Florida's application to operate a CWA § 404 permitting program that confirm that Florida's application, and EPA's approval, failed to comply with CWA § 404(g) and EPA's regulations implementing that section. EPA's failure to comply with the applicable statutory and regulatory requirement renders EPA's approval arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and in excess of EPA's statutory authority. *See, Massachusetts v. EPA*, 549 U.S. 497, 528-36 (citation and internal marks omitted) (holding EPA's failure to comply with statutory requirements under the Clean Air Act rendered EPA's decision "arbitrary, capricious, . . . or otherwise not in accordance with law"); *Miccosukee Tribe of Indians of Fla. v. United States*, 2008 U.S. Dist. LEXIS 57809, *63-100 (S.D. Fla. July 29, 2008) (holding that the EPA's finding regarding the amended Everglades Forever Act was "arbitrary, capricious, and not supported by the administrative record"). As such, Federal Defendants have conceded facts that are sufficient for the Court to grant summary judgment to Plaintiff on Counts I and III of the complaint.

### a.    Federal Defendants concede facts demonstrating Florida's application failed to comply with 40 C.F.R. § 233.11.

EPA's regulations mandate that a state seeking to operate a CWA § 404 permitting program must submit an application that includes, among other information, a "complete program description, as set forth in § 233.11." 40 C.F.R. § 233.10(b). Section 233.11, in turn, establishes the mandatory elements for the required program description. Among the required elements are a "description of the scope and structure of the State's program," including the

"extent of [the] State's jurisdiction," 40 C.F.R. § 233.11(a), a "description of the waters of the United States within a State over which the State assumes jurisdiction under the approved program," 40 C.F.R. § 233.11(h), and "a description of the waters of the United States within a State over which the Secretary retains jurisdiction subsequent to program approval," *id*. Federal Defendants concede that EPA's regulations required Florida to provide descriptions of the scope and structure of Florida's proposed program as well as separate descriptions of the waters to be assumed by the State and of the waters to be retained by the Army Corps of Engineers. Def. Mot. at 15 ("What EPA's regulations require is that Florida provide 'descriptions' of 'the scope and structure' of its program, 40 C.F.R. § 233.11(a), and the waters over which the State would assume jurisdiction under the approved program and the waters within the state 'over which the Corps retains authority under Section 404(g) of the Act,' *id*. § 233.11(h).").

As evidence that Florida's application complied with 40 C.F.R. § 232.11, Federal Defendants point to sections of Florida's application where the State "specifically defined the state-assumed waters and the retained waters the Corps would continue to administer." Def. Mot. at 15. Federal Defendants concede that Florida's "description" of assumed waters was simply "all waters of the United States that are not retained waters," Def. Statement of Material Facts ¶ 4; Def. Mot. at 15 ("The State-assumed waters were defined as 'all waters of the United States that are not retained waters.'"), and that Florida's definition of "retained waters" included only the following waters:

> those waters which are presently used, or are susceptible to use in their natural condition or by reasonable improvement as a means to transport interstate or foreign commerce shoreward to their ordinary high water mark, including all waters which are subject to the ebb and flow of the tide shoreward to their mean high water mark, including wetlands adjacent thereto.

Def. Statement of Material Facts ¶ 5. Federal Defendants acknowledge that neither Florida's definition of "retained waters" nor the list of retained waters submitted with Florida's application included waters on Indian lands or in Indian country. Def. Mot. at 15-16; *see also,* Def. Statement of Material Facts ¶¶ 5-6. Nevertheless, Federal Defendants concede that Florida did not assume permitting authority over waters in Indian country as defined in 18 U.S.C. § 1151 because Florida cannot assume permitting authority over "waters that lie outside of its regulatory jurisdiction." Def. Mot. at 18. As a result, the Secretary remains the permitting authority over waters in Indian country as defined in 18 U.S.C. § 1151. Def. Statement of Material Facts at ¶¶ 8, 10.

Taken together, Federal Defendants have conceded facts that demonstrate that Florida's application failed to comply with 40 C.F.R. § 233.11(h). Section 233.11(h) created a clear requirement that Florida's application describe the waters within the State of Florida over which the Army Corps would remain the permitting authority after the State's proposed program was approved:

> A description of the waters of the United States within a State over which the State assumes jurisdiction under the approved program; a description of the waters of the United States within a State over which the Secretary retains jurisdiction subsequent to program approval; and a comparison of the State and Federal definitions of wetlands.

40 C.F.R. § 233.11(h). As Federal Defendants have conceded, however, the descriptions of assumed waters and retained waters included with Florida's application omitted any reference to waters on Indian lands or in Indian country. Def. Statement of Material Facts ¶ 4 (citing Def. Ex. O, *Florida's State 404 Program Description Section a: Description of the Scope and Structure of the State's Program (Required by 40 C.F.R. § 233.11(a))*, and Def. Ex. P, *Florida's State 404 Program Section h: Description of the Waters of the United States within a State over which the*

*State Assumes Jurisdiction Under the Approved Program (Required by 40 C.F.R. § 233.11(h))*, neither of which mention waters on Indian lands or in Indian country). Because it failed accurately describe the waters over which the Army Corps would retain permitting jurisdiction after program approval, Florida's application failed to comply with 40 C.F.R. § 233.11(h). EPA's approval of Florida's non-compliant application was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and in excess of EPA's statutory authority, 5 U.S.C. § 706(a)(2)(A) & (C), and Plaintiff is entitled to summary judgment on Count I and Count III of the complaint.

> **b. Federal Defendants' interpretations are not entitled to deference and are unpersuasive.**

Federal Defendants offer multiple interpretations of CWA § 404(g) and EPA's implementing regulations in an attempt to show that its approval was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and in excess of EPA's statutory authority. None of those interpretations are entitled to deference and this Court should reject all of them. First, Federal Defendants now contend that in addition to assumed waters and retained waters, there is a third category of waters that includes waters over which a state lacks civil regulatory jurisdiction for "reasons separate and apart from Clean Water Act," such as waters on Indian lands. Def. Mot. at 17. Federal Defendants argue that the regulatory obligations to describe the waters to be assumed by the State program and the waters to be retained by the Army Corps simply do not apply to this third category of waters because "[n]either the statute nor the regulations require that a program description define all waters over which a state lacks jurisdiction." Def. Mot. at 17 ("The statute and EPA's regulations are silent as to other waters over which, for jurisdictional reasons separate and apart from the Clean Water Act, a state may lack civil regulatory jurisdiction."). But that is precisely what the statute and regulations require.

Contrary to Federal Defendants' argument, the CWA and EPA's regulations require a state to identify any waters of the United States within the state over which the state lacks civil regulatory jurisdiction. Section 404(g) of the CWA requires a state to submit "a full and complete description of the program it proposes to establish" and a statement from the state attorney general that "the laws of such State…provide adequate authority to carry out the described program." 33 U.S.C. § 1344(g)(1). Both provisions necessarily will require a state to identify any waters that are excluded from its proposed program because of a lack of civil regulatory jurisdiction. A description of a proposed state program that omitted any description of those waters, for example, would be considered incomplete.

EPA's regulations also require a state to identify any waters over which it lacks civil regulatory jurisdiction in two additional provisions. First, EPA's regulations plainly require that a program description include the "extent of [the] State's jurisdiction." 40 C.F.R. § 233.11(a). Any description of the extent of a state's jurisdiction that did not define the waters over which the state lacks jurisdiction would be incomplete and fall short of what is required by the regulations. Second, the regulations require the program description include "[a] description of the waters of the United States within a State over which the State assumes jurisdiction under the approved program; [and] a description of the waters of the United States within a State over which the Secretary retains jurisdiction subsequent to program approval…." 40 C.F.R. § 233.11(h). Because a state cannot assume jurisdiction over waters for which the state lacks civil regulatory jurisdiction, those waters are waters over which the Secretary retains jurisdiction, and they must be included in the state's description of retained waters.

Federal Defendants' interpretation of 40 C.F.R. § 233.11(h) as not applying to waters over which the Army Corps retains permitting authority because the state lacks civil regulatory

jurisdiction is not entitled to deference for several reasons and must be rejected. First, Federal
Defendants' interpretation is only entitled to deference if the regulation being interpreted is
"genuinely ambiguous," *Kisor*, at 2415, and 40 C.F.R. § 233.11(h) is not ambiguous. The
obligation to describe "the waters of the United States within a State over which the Secretary
retains jurisdiction subsequent to program approval" is just that: an obligation to describe the
waters for which the Army Corps will continue to issue permits.

Second, Federal Defendants' interpretations are not entitled to deference because they
conflict with the plain language of the regulation. EPA's regulation requires an applicant to
describe "the waters of the United States within a State over which the Secretary retains
jurisdiction subsequent to program approval." 40 C.F.R. 233.11(h). Nevertheless, Federal
Defendants offer multiple interpretations aimed at excluding waters in Indian country as defined
in 18 U.S.C. § 1151 from the obligation to describe retained waters in 40 C.F.R. § 233.11(h).
Federal Defendants argue that the obligation in 40 C.F.R. § 233.11(h) is limited to waters
retained for the reasons listed in CWA § 404(g)(1), relying on the note to 40 C.F.R. § 233.11(h).
Def. Mot. at 16, n.6, and 17, n.7. While the note does instruct applicants to obtain from the Army
Corps a list of waters over which the Secretary retains permitting authority "under section 404(g)
of the Act," nothing in the text limits the universe of retained waters to those waters retained for
the reasons listed in CWA 404(g) or changes the fact that the Army Corps retained permitting
authority over waters in Indian country as defined in 18 U.S.C. § 1151. 40 C.F.R. § 233.11(h)
(note). The plain language of the regulation covers retained waters *without regard to why the
Secretary has retained permitting authority.* Federal Defendants' argument that Florida did not
need to include waters on Indian lands in its definition of retained waters because the State "did

not attempt to assert jurisdiction over waters in Indian country" fares no better. Def. Mot. at 19. There is simply no basis in the text that could possibly support that interpretation.

Even if the Court concludes that 40 C.F.R. § 233.11(h) is ambiguous and EPA's interpretation thereof is reasonable, the interpretation is still not entitled to deference. Federal Defendants cite to no source suggesting that these interpretations existed prior to this litigation. As the Supreme Court has made clear, "post hoc rationalizations by counsel for agency action are entitled to little deference," *Sec. Indus. Ass'n v. Bd. of Governors of Fed. Res. Sys.*, 468 U.S. 137, 143 (1984), or no deference at all, *Kisor,* at 2417.

The obligation to describe retained waters created by 40 C.F.R. § 233.11(h) covers all waters "over which the Secretary retains jurisdiction subsequent to program approval," 40 C.F.R. § 233.11(h). Federal Defendants and Intervenors each concede that the Secretary retained jurisdiction over waters in Indian country as defined in 18 U.S.C. § 1151 after EPA approved Florida's application. Def. Mot. at 16; *State of Florida and Florida Department of Environmental Protection's Combined Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law* ("Int. Mot."), ECF #38 at 5. Having conceded that the Secretary retained permitting authority over waters in Indian country as defined in 18 U.S.C. § 1151 subsequent to EPA's approval of Florida's application, any interpretation of the regulation that excludes those waters conflicts with its plain language. Florida's application failed to comply with 40 C.F.R. § 233.11(h) because it failed accurately describe the waters over which the Army Corps would retain permitting jurisdiction after program approval. EPA's approval of Florida's non-compliant application was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and in excess of

EPA's statutory authority, 5 U.S.C. § 706(a)(2)(A) & (C), and Plaintiff is entitled to summary judgment on Count I and Count III of the complaint.

To the extent the Miccosukee Tribe's 2019 application to supplement its treatment as a state ("TAS") designation for the Tribe's water quality standards and water quality certification programs, cited by Federal Defendants, Def. Mot. at 26, n.11, is relevant to the Court's review of EPA's approval of Florida's application, it demonstrates why that approval was arbitrary and capricious. The Tribe's 2019 application sought to expand the scope of the Tribe's existing TAS designation to include five additional tracts of land. Def. Ex. Q at 1. While Federal Defendants are correct that the Miccosukee Tribe was not required to demonstrate that each waterbody within the five tracts would be considered a water of the United States, neither was the State of Florida – under both programs, the only waters that are included are those that qualify as a water of the United States. Before EPA would approve the Tribe's application, however, EPA required the Tribe to do the very thing Federal Defendants contend Florida does not need to do: identify the specific lands that were included in the Tribe's application. As part of its application, the Tribe submitted maps, legal descriptions, and the precise number of acres included in each tract. *See, Id.,* at 11-13. Contrary to Federal Defendants' argument, EPA is the only entity that is advancing a different position in this litigation from the position advanced in the context of the TAS application.

III. **EPA's Substitution of Indian Country as Defined in 18 U.S.C. § 1151 for the Regulatory Term Indian Lands was Arbitrary, Capricious or Otherwise Not in Accordance with Law or in Excess of EPA's Statutory Authority**

Neither Federal Defendants nor Intervenors dispute that the term "Indian country" appears nowhere in EPA's regulations implementing CWA § 404(g). Nor do they dispute that EPA's regulations refer instead to "Indian lands." Instead, Federal Defendants assert that EPA

has a long-standing interpretation of "Indian lands" in 40 C.F.R. § 233.1(b) to be synonymous

with Indian country as defined in 18 U.S.C. § 1151. Because EPA has announced that

interpretation for the first time in this litigation and because it concerns a subject that falls within

another agency's area of expertise, EPA's interpretation of Indian lands is not entitled to

deference. *Kisor,* at 2416-17.

> ### a. EPA's decision to substitute Indian country as defined in 18 U.S.C. § 1151 for the regulatory term "Indian lands" renders EPA's approval of Florida's application arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

While the standard of review under 5 U.S.C. § 702(A) is narrow, courts are clear that an

agency action is arbitrary, capricious or otherwise not in accordance with law when the decision-

maker failed to consider the relevant factors. *Citizens for Smart Growth v. Sec'y of the DOT*, 669

F.3d 1203, 1210 (11th Cir. Ct. App. 2012) (citing *Fund for Animals*, *Inc. v. Rice,* 85 F.3d 535,

541-542 (11th Cir. Ct. App. 1996)). As Federal Defendants have conceded, Florida cannot

assume permitting authority over "waters that lie outside of its regulatory jurisdiction…

includ[ing] waters in Indian lands where states generally lack 'authority to regulate.'" Def. Mot.

at 18. That is why EPA adopted regulations that exempted states from the need to include waters

on Indian lands as part of a proposed CWA § 404 permitting program. *See*, 40 C.F.R. § 233.1(b).

EPA also adopted regulations requiring a state application to describe the extent of the proposed

program, 40 C.F.R. § 233.11(a), and to include a statement from the state's attorney general that

the laws of the state are sufficient to implement the proposed program, 40 C.F.R. § 233.12(a).

The "relevant factors" that EPA is required by its regulations to consider when reviewing

an application to operate a CWA § 404 permitting program necessarily include whether the

extent of the program reaches waters on Indian lands. Florida's application speaks only to waters

in Indian country as defined in 18 U.S.C. § 1151 – Florida never addresses waters on Indian

lands. Importantly throughout the administrative process, neither Florida nor EPA ever articulated an interpretation of Indian lands as being synonymous with Indian country as defined in 18 U.S.C. § 1151.

EPA's interpretation is not entitled to deference because it was announced for the first time in this litigation and falls outside the area of EPA's expertise. While Federal Defendants and Intervenors cite several sources for the proposition that EPA interprets Indian lands to be synonymous with Indian country as defined in 18 U.S.C. § 1151, a close review of both motions reveal that neither Federal Defendants nor Intervenors are able to cite to a single time when EPA articulated that interpretation for 40 C.F.R. § 233.1(b). As such, EPA's consideration of Florida's proposed program on waters in Indian country as defined in 18 U.S.C. § 1151 represents the consideration of factors other than those required by the agency's own regulations. EPA's approval of Florida's application was, therefore, arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, and Plaintiff is entitled to summary judgment on Count II in the complaint.

> **b. EPA's interpretation of Indian lands to be synonymous with Indian country in other programs does not provide a basis for upholding EPA's approval of Florida's application.**

In defense of EPA's use of the definition of Indian country from 18 U.S.C. § 1151 to determine the scope of Indian lands that would be retained by the Army Corps, Federal Defendants repeat what Plaintiff's Motion for Summary Judgment had already acknowledged: EPA has a "longstanding practice of interpreting 'Indian lands' by reference to the 'Indian country' statute in regulations analogous to those at issue." Def. Mot. at 20; see also, Pl. Mot. at 11. The fact that there are several instances where EPA formally defined Indian lands to be

consistent with the definition of Indian country from 18 U.S.C. § 1151 does not support Federal Defendants' position. To the contrary, it undermines that position.

The examples cited in Plaintiff's Motion for Summary Judgment of other regulatory programs where EPA adopted a definition of Indian lands demonstrate that the term Indian lands is not naturally synonymous with the definition of Indian country contained in 18 U.S.C. § 1151. Rather, when EPA wanted the terms to have the same meaning, the agency has taken steps to formally adopt a definition of Indian lands. As documented in Plaintiff's Motion for Summary Judgment, EPA has had multiple opportunities to define Indian lands in the context of CWA § 404(g) but has never done so. Pl. Mot. at 10.

**IV.    Plaintiff's Claims are Properly Before the Court and Justiciable**

Federal Defendants and Intervenors make several arguments that some or all of the claims raised in Plaintiff's complaint cannot be heard by the Court. Those arguments rest upon a misunderstanding of Plaintiff's complaint and Motion for Summary Judgment, the relevant caselaw, or the relevant facts, and each should be rejected by the Court.

**a.    Plaintiff has standing to challenge EPA's approval of Florida's application to operate a CWA § 404 permitting program.**

Intervenors devote significant space in their motion to arguments that Plaintiff lacks standing to challenge EPA's approval of Florida's application. Int. Mot. at 8-13, 15-16. Those arguments misapply Supreme Court and Court of Appeals precedent and must be rejected.

**i.    Plaintiff has met its burden to show that it possesses the "irreducible constitutional minimum of standing" at the summary judgment stage of the litigation.**

The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff must have suffered an injury in fact that is concrete and particularized, actual or imminent, and not hypothetical; there must be a causal

connection between the injury and the conduct complained of in that the injury is fairly traceable to the challenged action of the Defendant; and it must be likely, as opposed to speculative, that a favorable decision will provide redress. *Id.* at 560-561.

Plaintiff bears the burden of demonstrating standing, with the burden increasing at successive stages of the litigation. *Id.* at 561. That burden is not the same in every case, however. "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage)…to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Id.* When, as in this case, a plaintiff is regulated by the government action being challenged, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id*. at 561-562.

Plaintiff has met its burden and has adequately demonstrated its standing in this case. The Tribe submitted a sworn declaration with the filing of its complaint that is sufficient for establishing each of the three elements of standing. *See*, *Donaldson Declaration*. The Donaldson Declaration established that the Miccosukee Tribe is regulated by Florida's approved CWA § 404 permitting program. *Id*. at ¶ 24 (alleging that two Miccosukee permit applications were transferred from the Army Corps to the State of Florida "upon EPA's approval of Florida's proposed program"). The Declaration also alleged an injury in fact: Requiring the Tribe to apply to the State of Florida CWA § 404 permits on Miccosukee lands infringed upon the Tribe's sovereignty. *Id.* (stating that "[i]n order to protect the Tribe's sovereignty, the Miccosukee could not complete FDEP's permitting process…"); *see also,* Complaint at 1 (stating that the action was brought "To defend its sovereignty and authority against unlawful administrative diminishment…").

Despite Intervenors' attempt to dismiss the significance of Plaintiff's injury, Supreme Court and Eleventh Circuit precedent "has consistently recognized that a tribe has an interest in protecting tribal self-government from the assertion by a state that it has regulatory or taxing authority over Indians and non-Indians conducting business on tribal reservations." *Miccosukee Tribe of Indians v. Fla. State Ath. Comm'n*, 226 F.3d 1226, 1230 (11th Cir. 2000) ("*Miccosukee Tribe*") (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142 (1980) ("*White Mountain Apache Tribe*")). The Supreme Court has also recognized that "Indian tribes retain 'attributes of sovereignty over both their members and their territory.'" *White Mountain Apache Tribe,* at 142 (citing *United States v. Mazurie*, 419 U.S. 544, 557 (1975)). Here, the Donaldson Declaration cites to two examples of where Florida has attempted to regulate Tribal activity in waters that are located in areas where the Miccosukee have Congressionally and judicially recognized rights. Donaldson Declaration at ¶¶ 21-24 (referring to the permit application submitted to the Army Corps on behalf of Susie Billie, a member of the Miccosukee Tribe, to build a home within Big Cypress National Preserve, and to the permit application submitted to create uplands suitable for homes at the Miccosukee Tribe's Tigertail Camp within lands perpetually leased to the Tribe by the State of Florida).

The Tribe has consistently taken the position that the areas where the two projects are located are within Indian lands, including Indian country as defined in 18 U.S.C. § 1151. Fed. Def. Ex. K at 1-3; Fed. Def. Ex. I at 1-2; Fed. Def. Ex. J at 1-2. For its part, EPA has steadfastly refused to opine on whether it considers these or any other areas to be Indian country as defined in 18 U.S.C. § 1151. Fed. Def. Ex. L. Federal Defendants and Intervenors both insist that approving Florida's proposed program had no effect on whether waters were located in Indian country as defined by 18 U.S.C. § 1151 and have represented that any such questions will be

determined in the context of a particular permit application, after the State and EPA consider information provided by the Tribe. Def. Mot. at 25; Int. Mot. at 5.

And yet, Intervenors declare, without any citation or source of authority, that the two permit applications cited in the Donaldson Declaration are for projects "located in assumable waters." Int. Mot. at 12. Not content to stop there, Intervenors purport to decide *sua sponte* whether each category of lands in which the Miccosukee Tribe has an interest is considered Indian country as defined by 18 U.S.C. § 1151. Int. Mot. at 15-20. There is simply no legal theory under which the State of Florida has the authority to decide what constitutes Indian lands under 40 C.F.R. § 233.1(b) or Indian country as defined in 18 U.S.C. § 1151. Because EPA approved Florida's application without requiring the State to comply with the requirement in 40 C.F.R. § 233.11(h) to describe waters that would remain in the Army Corps' permitting authority, however, Florida is free to decide what qualifies as Indian country under 18 U.S.C. § 1151. The Donaldson Declaration alleges that Florida's attempt to regulate the Tribe and its members on Miccosukee lands infringes upon the Tribe's sovereignty and Intervenors' brief demonstrates that the alleged injury is not speculative or hypothetical, but very real. Consistent with controlling precedent, the allegation in the Donaldson Declaration satisfies the Tribe's obligation to allege an injury in fact. *Miccosukee Tribe*, at 1231.

Federal Defendants and Intervenors both contend that the Memorandum of Agreement between EPA and the State of Florida includes a sufficient process for raising and resolving questions about whether a project has been proposed on waters on Indian lands or in Indian country as defined in 18 U.S.C. § 1151. Once again, however, this argument quickly falls apart under closer scrutiny. The special process Federal Defendants and Intervenors champion involves the Tribe submitting comments to the State of Florida *during the public comment period*

18

for a permit application. If the Tribe provides a copy of the comments to EPA, the agency shall consider the information in exercising its wholly discretionary authority to oversee Florida's program. Def. Mot. at 25.

Federal Defendants next direct the Court to a process outlined in the Memorandum of Agreement between Florida and the Army Corps and allege that "Plaintiff has not identified any valid reason why this process cannot adequately address issues concerning projects or waterbodies in which the Tribe may have an interest." Def. Mot. at 27. Taking that statement at face value, the reason why the Florida-Army Corp process will not adequately address the Tribe's concerns is that because the process *does not apply.* The process cited by Federal Defendants is limited on its face to modifications to the retained waters list *based on the navigability factors in CWA § 404(g) only* – and it can only be invoked by the State of Florida. Def. Ex. F at 2-3. Requiring the Miccosukee Tribe to try and convince the State of Florida that certain waters are on Indian lands or in Indian country as defined in 18 U.S.C. § 1151 does not "adequately address" the Tribe's stated concern that being regulated by the State infringes upon the Tribe's sovereignty – it compounds that injury.

Plaintiff's alleged injury is not, as Intervenors argue, "self-inflicted." Int. Mot. at 11-12. It is unclear how Intervenors believe the Tribe is responsible for infringing on its own sovereignty, but even putting that injury aside, Florida's determination that a project is in assumable waters has immediate consequences for the Miccosukee Tribe. *See, e.g., EPA Responses to Comments from the National Historic Preservation Act Section 106 Consulting Parties on Florida's Request for Assumption,* EPA-HQ-OW-2018-0640-0607, attached as Pl. Ex. A, at 7 (conceding that Florida's issuance of a CWA § 404 permit will not trigger government-to-government consultation with impacted Tribes, in contrast to permits issued by the Army

Corps). The process agreed to by EPA and the State does not address the injury Plaintiff has alleged and certainly does not prevent Plaintiff from demonstrating standing in this case.

Intervenors also argue that Plaintiff's claims are not redressable by the Court. Int. Mot. at 8-9, 13 n.13. That argument is equally without merit. The Supreme Court has held that when a plaintiff is regulated by the action being challenged, there is little doubt that an order undoing the action will redress the claimed injury. *Lujan*, at 561-562. Here, the alleged injury is clearly traceable to EPA's approval of Florida's program as that is what resulted in Florida attempting to regulate Tribal activities. It is equally clear that the Court possesses the power to redress Plaintiff's injury. Plaintiff has specifically requested that the Court vacate EPA's approval of Florida's program, which would eliminate the infringement on the Tribe's sovereignty that has resulted from EPA's approval.

Intervenors advance one final argument in their effort to divest Plaintiff from having standing to bring its complaint: that CWA § 1344(h)(3), under which a state's application is "deemed approved" if EPA fails to act on it within 120 days, eviscerates the Tribe's standing to challenge EPA's approval and strips the Court of its jurisdiction to hear such a challenge because if the Court were to vacate EPA's approval, Florida's program would nevertheless be immediately "deemed approved" as more than 120 days have lapsed since EPA received the application. Int. Mot. at 13, n.13. There is no support for this novel interpretation of the statute. The cases cited by Intervenors stand for no such position and each involve factual scenarios far different from those here. *See, Sprint Nextel v. FCC*, 508 F.3d 1129 (D.C. Cir. 2007) (deciding a case in which an agency failed to adopt order before the statutory deadline passed); *AT&T Corp. v. FCC*, 369 F.3d 554 (D.C. Cir. 2004) (per curiam) (concluding that deadlocked decisions by Commissioners of the Federal Communications Commission are not reviewable orders); and

20

*Pub. Citizen, Inc. v. FERC*, 839 F.3d 1165 (D.C. Cir. 2016) (holding that an agency's "public notice" that certain statutory requirements would "sunset . . . by operation of law" for a specific entity did not constitute a final, reviewable agency action). Intervenors advanced this argument in a separate challenge to EPA's approval of Florida's program currently being heard by the United States District Court for the District of Columbia. *Ctr. for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 191 (D.D.C. 2022). That court rejected Intervenors' argument, holding that "without a more explicit statutory directive, the Court is disinclined to assume that Congress intended that an unlawful program unlawfully approved would be 'deemed approved' once a Court finds it unlawful." *Id*. (internal quotation marks omitted). This Court should reject the argument as well.

Plaintiff has met its burden to allege, through sworn testimony, that it has suffered an injury in fact that is fairly traceable to the Defendants' challenged conduct and redressable by the Court. As such, Plaintiff has demonstrated it possesses the requisite standing to bring the claims in its Complaint, and the Court must reject claims by the Federal Defendants or Intervenors to the contrary.

### b. Plaintiff's Complaint challenges EPA's approval of Florida's application to operate a CWA § 404 permitting program, not Florida's application.

Intervenors raise several arguments alleging that Plaintiff's challenges to Florida's application or to EPA's determination that the application was complete are not justiciable. Int. Mot. at 7-10. Those arguments are misplaced. Plaintiff's Motion for Summary Judgment is clear that Plaintiff challenges *EPA's approval of Florida's application* to operate a CWA § 404 permitting program, not Florida's application itself. *See*, *e.g.*, Pl. Mot. at 5 ("EPA's approval of Florida's proposal to operate a CWA § 404 permitting program must be set aside…."); Pl. Mot. at 7-8 ("EPA's decision to approve [Florida's] application despite the fact that it did not include

21

all elements required by EPA's regulations was arbitrary, capricious or otherwise not in accordance with law."); Pl. Mot. at 9 ("EPA's approval of Florida's application notwithstanding the fact that it did not include waters on Indian lands as retained waters was arbitrary and capricious or otherwise not in accordance with law."); Pl. Mot. at 11 ("As a result, EPA's approval was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and must be set aside."); Pl. Mot. at 14 ("As a result, EPA's approval was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and must be set aside."). Because Plaintiff does not challenge Florida's application, Intervenors' arguments that such challenges would be non-justiciable are not relevant to the Court's review.

### c.  Plaintiff is not prohibited from challenging EPA's substitution of Indian country as defined in 18 U.S.C. § 1151 for Indian lands.

Federal Defendants argue that Plaintiff is precluded from challenging EPA's substitution of Indian country as defined in 18 U.S.C. § 1151 for Indian lands when approving Florida's application, alleging that the issue was not raised during the administrative process. Def. Mot. at 20. That argument is wrong on the facts and the law.

### i.  Plaintiff is not limited to pursuing claims that were raised during the administrative process.

Federal Defendants cite a single district court decision from outside the Eleventh Circuit for their argument that Plaintiff is barred from raising a challenge to EPA's substitution of the term "Indian country," as that term is defined in 18 U.S.C. §1151, for the term "Indian lands," which is the term that appears in EPA's regulations. Def. Mot. at 20 (citing *New LifeCare Hosps. of N.C., LLC v. Azar*, 466 F. Supp. 3d 124 (D.D.C. 2020) ("*New LifeCare*")). A closer review of the holding in that case, however, shows that it does not support Federal Defendants' argument. To the contrary, under the actual holding of the case, as well as the holding of the controlling

decision from the Supreme Court, Plaintiff's judicial complaint is not limited to claims raised to EPA during the administrative process.

The court in *New LifeCare,* following the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103 (2000), held that there are three situations in which so-called "issue exhaustion" would limit a litigant to claims that were raised during an underlying administrative process: when required by statute, when required by regulation, or when the administrative process included adversarial proceedings. *New LifeCare*, at 130-131. Federal Defendants make no arguments that any of those three situations exist in the current case, nor could they. Neither the Administrative Procedure Act nor EPA's regulations implementing CWA § 404(g) include a provision triggering issue exhaustion, and EPA's review of Florida's application cannot be argued to be an adversarial proceeding. As such, the Court should reject the argument that Plaintiff's claims regarding EPA's use of the definition of Indian country from 18 U.S.C. § 1151 are barred.

ii.   **The Miccosukee Tribe commented on EPA's use of the definition of Indian country from 18 U.S.C. § 1151 during EPA's review of Florida's application.**

Even if the Court were to conclude that issue exhaustion applied to this case, the Miccosukee Tribe submitted comments that were sufficient to avoid the application of that doctrine to the Plaintiff's challenge to EPA's use of Indian country as defined in 18 U.S.C. § 1151 in place of Indian lands. There is no question that during the administrative process the Miccosukee Tribe provided EPA with information that detailed the Tribe's concerns with EPA's use of the term Indian country *as defined in 18 U.S.C. § 1151* to determine which of the Tribe's lands would be subject to Florida's proposed permitting program if approved under CWA § 404(g). As noted in Plaintiff's Motion for Summary Judgment, the meeting notes cited by Federal Defendants demonstrate that EPA understood there were Indian lands beyond those that would be included within the definition of Indian country from 18 U.S.C. § 1151. Pl. Mot. at 10

(highlighting that EPA's notes recognized that the Miccosukee Tribe has "an interest in a variety of lands" and referred separately to "lands in Florida [the Miccosukee Tribe] believes meet the statutory definition of Indian Country" and to "Tribal Lands"); Def. Ex. I at 1-2; Def. Ex. J at 1-2. The Miccosukee Tribe also raised its concerns in written comments submitted to EPA. Def. Ex. K at 2-3. In those comments, the Miccosukee Tribe provided EPA information regarding Tribal lands that were "additional to [the Tribe's] existing reservation properties" and argued that EPA "must assure that the State of Florida's assumption of 404 permitting does not adversely impact or abrogate [the Tribe's] rights" to use those lands. *Id*. at 2.

Finally, Federal Defendants' effort to convince the Court that the Miccosukee Tribe believes that the term Indian lands is synonymous with the definition of Indian country contained in 18 U.S.C. §1151 is without merit. Unable to cite to any of the Miccosukee Tribe's written comments, Federal Defendants' turn to the questionable tactic quoting the Tribe based on meeting notes prepared by EPA. Def. Mot. at 20. As shown above, however, nothing in those notes supports Federal Defendants' argument.

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiff's Motion for Summary Judgment and Deny Federal Defendants' and Intervenors' Cross-Motions for Summary Judgment.


Respectfully submitted,

GEORGE B. ABNEY
Florida Bar # 171557
george.abney@alston.com
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

24

Phone: 404-881-7000
Fax: 404-881- 7777

KEVIN S. MINOLI
DC Bar # 1630494
kevin.minoli@alston.com
Alston & Bird LLP
950 F Street NW
Washington , DC 20004
Phone: 202-239-3760
Fax: 404-881-7777
*Attorneys for Plaintiff Miccosukee Tribe*
*of Indians of Florida*